IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN COCKRELL and DENISE COCKRELL, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY FUNDING, LLC, <br><br> Defendant. | Civil Action No. 1:22-cv-296 |

**CLASS ACTION COMPLAINT**

Plaintiffs John Cockrell and Denise Cockrell, by counsel, file this Class Action Complaint against Gregory Funding, LLC ("Gregory Funding"). Plaintiffs allege as follows:

**PRELIMINARY STATEMENT**

1. The Commonwealth of Virginia and its local governments exempt several categories of vulnerable individuals from paying state and local real estate taxes, including: the elderly, Va. Code § 58.1-3210; the disabled, Va. Code § 58.1-3210; disabled veterans, Va. Code § 58.1-3219.5; and the surviving spouses of veterans, law-enforcement personnel, firefighters, search and rescue personnel, or emergency medical services personnel who were killed in the line of duty, Va. Code §§ 58.1-3219.9; 58.1-3219.14.

2. The Cockrells are exempt from paying real estate taxes because Mr. Cockrell is a disabled veteran. Because of his combat-related disability, Prince William County determined that he was 100-percent tax exempt from real estate taxes starting in 2011.

3. Like most homeowners in Virginia, however, the Cockrells' mortgage servicer required them to pay estimated homeowner's insurance and real estate taxes into an escrow

account.

4. Under most mortgages, consumers cannot pay their own insurance and taxes, nor are they able to choose the entity that maintains their escrow accounts—their mortgage servicers.

5. Even though the Cockrells were tax exempt, Gregory Funding insisted that they pay an extra $1,774.29 per month towards their mortgage to cover the real estate taxes that it asserted they owed to Prince William County, plus a "cushion" amount that Gregory Funding required them to maintain in the escrow account.

6. When the Cockrells received bills reflected this inflated and incorrect amount, the called and told Gregory Funding that they did not owe real estate taxes and provided a copy of their tax exemption.

7. Gregory Funding refused to remove the improper charges and told the Cockrells that they had to pay the tax payments until the next annual escrow accounting.

8. When the Cockrells could not pay this amount because of their limited income and instead only paid what was due under their loan, Gregory Funding refused to apply their payments to their account, considered their loan in default, and charged them late fees and other default-related charges.

9. Gregory Funding's conduct towards the Cockrells breached the fiduciary duty that Gregory Funding owed to the Cockrells and was also negligent.

10. Then, when the Cockrells received a foreclosure notice from their second mortgage holder, Gregory Funding told them that there would be no foreclosure so long as their first mortgage was current.

11. The Cockrells relied on this fraudulent representation and did not seek to prevent the foreclosure by the second mortgagee.

12. Of course, Gregory Funding's representations were materially false, and the Cockrells' home was sold at a foreclosure sale on April 29, 2021.

13. Gregory Funding's intentional misrepresentations were fraudulent.

14. And when the Cockrells sent Gregory Funding a Notice of Error disputing the improper charges, Gregory Funding refused to conduct an investigation or correct its inaccurate servicing, which violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.

15. And when the Cockrell requested that Gregory Funding send them documents, including the servicing notes for their accounts, so that they could confirm their claim of Gregory Funding's improper servicing, Gregory Funding refused to provide them.

16. Upon information and belief, Gregory Funding has a standard policy of refusing to provide servicing notes when consumers request them and instead responds with a boilerplate response that the documents are "proprietary."

17. This standard policy violated RESPA, 12 U.S.C. § 2605 and the related regulations, 12 C.F.R. § 1024.36.

18. And because this policy was applied to all consumers during the class period, the Cockrells allege this claim on a class wide basis.

19. As a result, the Cockrells seek damages for themselves and the putative class members for statutory damages and their attorney's fees and costs. For their individual claims, the Cockrells seek their actual damages, statutory damages, punitive damages, attorney's fees, and costs.

## JURISDICTION AND VENUE

20. This Court has jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 2605(f). It also has supplemental jurisdiction over the Cockrells' state-law claims under 28 U.S.C. § 1367.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the acts and transactions that lead to this Complaint occurred here.

## PARTIES

22. The Cockrells are each a natural person who lived in Prince William County during the relevant period.

23. Gregory Funding is an Oregon corporation with its principal place of business in Portland, Oregon. At all times relevant to this Complaint, Gregory Funding was a mortgage loan servicing company governed by RESPA.

## FACTS

### *Gregory Funding's Mortgage Servicing Business*

24. Gregory Funding is a national mortgage servicing company.

25. As is customary in the mortgage lending, borrowers, like the Cockrells, have no say in who services their mortgage loan.

26. As a mortgage servicer, Gregory Funding manages the day-to-day aspects of consumers' mortgage loans, including collecting and applying monthly payments, maintaining escrow accounts, communicating with borrowers about their loans, reporting payment information to various credit bureaus, and managing the foreclosure process when a consumer becomes delinquent.

27. Pertinent to this litigation, Gregory Funding manages escrow accounts for the mortgages that it services. A mortgage escrow account is "a trust account set up in a borrower's name to ensure the timely payment of specified obligations affiliated with a property." H.R. Rep. No. 111-94, at 53 (2009).

28. Under escrow agreements, which are often required by borrowers' deeds of trust, borrowers pre pay a set amount into their escrow accounts on a regular, typically monthly, basis.

*Id.* Lenders "then use these collected sums to guarantee the timely payment of property tax bills and insurance premiums." *Id.* By guaranteeing timely payment, lenders protect themselves and the borrowers from tax liens and property damage risk. *Id.* When the mortgage contract ends, any money remaining in escrow is returned to the borrower.

29. Gregory Funding receives significant servicing income from interest earned on borrowers' tax and insurance payments, which are held in an escrow account between the time the payments are collected and the time they are paid out to the appropriate insurance or taxing authority. A substantial part of Gregory Funding's servicing revenue is therefore dependent on escrow disbursement timing, escrow analysis, and escrow cushion requirements. Adam J. Levitin & Tara Twomey, *Mortgage Servicing*, Georgetown Law and Economics Research Paper No. 11-01 (Dec. 15, 2010) at 39 (available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1324023).

30. Gregory Funding also makes servicing income from assessing and collecting late fees, foreclosure fees, and other default-related fees to borrowers' accounts. *Id.* at 41. Under most servicing agreements, Gregory Funding is allowed to keep all of these fees for itself and does not have to pay them to the owner of the mortgage. *Id.* at 41.

31. Gregory Funding is, therefore, financially motivated to require consumers to maintain as large an escrow balance as possible, and to aggressively enforce the balance of escrow accounts through late fees and other default-related charges.

32. As detailed below, the Cockrells were victims of Gregory Funding's aggressive and improper escrow accounting policies.

33. Compounding this problem, Gregory Funding—contrary to RESPA's requirements—refuses to provide certain categories of information, like servicing notes and

telephone recordings, when consumers request them.

34. "RESPA is a remedial consumer protection statute and imposes obligations upon servicers of federally related mortgage loans." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024) [hereinafter 2013 Regulation X Amendments].

35. "Specifically, with respect to mortgage servicing, the consumer protection purposes of RESPA include responding to borrower requests and complaints in a timely manner, maintaining and providing accurate information, helping borrowers avoid unwarranted or unnecessary costs and fees, and facilitating review for foreclosure avoidance options." *Id.*

36. Consistent with these purposes, RESPA imposes mandatory duties on mortgage servicers in responding to borrower inquiries. 12 U.S.C. § 2605(e).

37. For Qualified Written Requests, § 2605(e) requires the servicer to conduct an investigation and provide the borrower with a written explanation or clarification that includes: (1) the information requested by the borrower or an explanation of why the information requested is unavailable *and* (2) the name and telephone number of a servicer employee who can help the borrower.

38. A servicer that ignores the requirements of § 2605(e) is liable to the borrower for each failure for actual damages and, for a pattern or practice of noncompliance, additional damages of up to $2,000. 12 U.S.C. § 2605(f).

39. These requirements and the corresponding civil liability were first added to RESPA in 1990 by the Cranston-Gonzalez National Affordable Housing Act as part of a broader effort to set a national housing policy so that every American family could afford a decent home in a suitable environment. *See* Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101–

625, §§ 101, 102, 941, 104 Stat 4079 (1990).

40.	In responding to the 2007–2008 financial crisis, Congress further amended § 2605 to (1) increase penalties that servicers incur for violating § 2605(e) and (2) authorize the Consumer Financial Protection Bureau to prescribe regulations that are appropriate to carry out RESPA's consumer protection purposes. *See* 2013 Regulation X Amendments, *supra* at 10709.

41.	Thus, the protections in RESPA, including § 2605(e), were specifically designed to ensure that borrowers have timely access to accurate information about their accounts, that borrowers can avoid unnecessary fees and charges, and that borrowers can explore all available options to avoid foreclosure of their homes. *See id.*

42.	RESPA's remedial nature provides a necessary incentive for mortgage servicers to comply with its requirements. *See* 2013 Regulation X Amendments, *supra* at 10701. Given the unique attributes of the servicing market, servicers are motivated "to look for opportunities to impose fees on borrowers to enhance revenues." *Id.* The Bureau observed that servicers "earn revenue from fees assessed on borrowers, including fees on late payments, fees for obtaining force-placed insurance, and fees for services, such as responding to telephone inquiries, processing telephone payments, and providing payoff statements." *Id.* Thus, the imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve the statute's consumer protection purposes.

### *Gregory Funding Charges the Cockrells for Taxes that They Did Not Owe*

43.	The Cockrells bought their home in Prince William County in May 2007.

44.	As long as the Cockrells lived at the property, they used it as their primary residence.

45.	The Cockrells' mortgage on the property was a federally related mortgage.

46.	Because Mr. Cockrell suffered a combat-related injury while serving in the U.S.

7

Army, he is disabled, and the Cockrells are exempt from paying real estate taxes in Prince William County.

47. Gregory Funding knew that the Cockrells were tax exempt when it became the Cockrells' servicer in 2017.

48. Even so, in 2020, Gregory Funding improperly paid Prince William County $7,097.16 for property taxes on the Cockrell's home. Because it made these payments, it assessed that amount to the Cockrell's escrow account, and started charging the Cockrells late fees and other charges to the loan because .

49. Gregory Funding made these payments to Prince William County in June 2020 and December 2020.

50. Gregory Funding sent the Cockrells an escrow analysis on December 3, 2020 showing the inaccurate tax payments.

51. The Cockrells called Gregory Funding several times and explained that the analysis was incorrect because they were tax exempt.

52. The Cockrells also sent Gregory Funding proof that they were tax exempt.

53. Gregory Funding refused to remove the inaccurate charges from the Cockrells' account. Instead, it told them that they needed to wait until the next escrow analysis for the inaccuracy to be corrected.

54. Even though the Cockrells did not owe these taxes, the Cockrells did not receive a credit to their account until Prince William County refunded the overpayment. The full tax payment was not refunded until July 2021.

55. During this time, Gregory Funding placed around $2,000 of the Cockrells' payments in a suspense account, assessed improper fees and charges, and represented to the

Cockrells that they were several thousand dollars delinquent on their mortgage.

56. Upon information and belief, most of this delinquency resulted from the improper real estate taxes that Gregory Funding had improperly charged to the Cockrells.

### *Gregory Funding Lies to the Cockrells about Foreclosure*

57. In March 2021, the Cockrells received a notice that their second mortgagee intended to foreclose on their home.

58. Part of the balance that the second mortgagee sought to collect from the Cockrells were improper fees and interest.

59. The Cockrells could not afford this inflated amount, but wanted to save their home.

60. The Cockrells called Gregory Funding at least twice after they received the notice because they did not understand why there would be a foreclosure when they were making their monthly mortgage payment to Gregory Funding.

61. During these calls, Gregory Funding represented to the Cockrells that the second mortgagee could not foreclose on their home if they were current on their first mortgage and that only the primary lienholder could start a foreclosure.

62. Gregory Funding told the Cockrells to disregard the foreclosure notice and not worry about a foreclosure sale.

63. The Cockrells relied on this representation and did not act to prevent the foreclosure, like hiring an attorney or seeking to borrow money to cover the deficiency.

64. Gregory Funding's representations, of course, were false, and the foreclosure sale occurred on April 21, 2021.

### *Gregory Funding Violates RESPA in Responding to the Cockrells' Qualified Written Request*

65. The Cockrells sent Gregory Funding a Qualified Written Request in August 2021.

66. This Qualified Written Request was sent to the address that Gregory Funding

designated for these correspondences.

67. The Cockrells' Qualified Written Request asked Gregory Funding to investigate the inaccurate escrow amounts that it was charging them, update their payment history, and reverse late fees or any other default-related fees.

68. The Cockrells' Qualified Written Request also asked Gregory Funding to provide them with: all documents to support its contention that they owed county taxes; copies of any telephone recordings; servicing notes; and an explanation for any late fees.

69. Gregory Funding responded to the Cockrells' Qualified Written Request on September 21, 2021.

70. Gregory Funding refused to investigate the Cockrells' dispute and remove all of the late fees and charges that it had assessed.

71. Gregory Funding also refused to produce any telephone recordings or the servicing notes associated with the Cockrells' loan.

72. Instead, Gregory Funding provided a boilerplate response that it "consider[s] that information proprietary."

73. Gregory Funding withheld this information even though it would have provided valuable information about the Cockrells' mortgage that would have helped them resolve their disputes with Gregory Funding, including the improper tax charges and its representations about the foreclosure process.

74. As a result of Gregory Funding's conduct, the Cockrells suffered significant damages, including the future value and lost equity in the property; the loss of their home; the assessment of fees that they did not owe; embarrassment; humiliation; and other emotional distress; and out-of-pocket expenses.

## COUNT ONE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)(C) and 12 C.F.R. § 1024.36(d)
### (Class Claim)

75. The Cockrells incorporate each of the preceding allegations.

76. Under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, the Cockrells seek certification of the following class:

> All consumers: (1) whose primary residence subject to a mortgaged serviced by Gregory Funding; (2) who, within three years preceding the filing of this Complaint submitted a Qualified Written Request or Request for Information to Gregory Funding requesting copies of the servicing notes for their loan; and (3) to whom Gregory Funding sent a response indicating that it would not provide the servicing notes based on the purported confidentiality, lack of relevance, privilege or impropriety of the request, or the supposedly undue burden it would cause Gregory Funding to comply with its duties under RESPA.

77. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that there are so many class members that it would be impractical to join them all in a single lawsuit. Gregory Funding services mortgages throughout the country. Upon information and belief, hundreds, if not thousands, of consumers experienced Gregory Funding's uniform procedures for responding to qualified written requests and requests for information during the class period. These class members' names and addresses are identifiable through Gregory Funding's internal business records, and they may be notified of this litigation by published or mailed notice.

78. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Gregory Funding's refusal to provide the Cockrells and the putative class members with copies of their servicing notes was proper; (2) whether Gregory Funding's conduct

violated RESPA; and (3) the appropriate amount of statutory damages.

79.   **Typicality. Fed. R. Civ. P. 23(a)(3).** The Cockrells' claims are typical of the claims of each putative class member. In addition, the Cockrells are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

80.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. The Cockrells are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. The Cockrells have retained competent counsel with extensive class-action experience, and they intend to continue to prosecute the action vigorously. The Cockrells and their counsel will adequately protect the putative class members' interests. Neither the Cockrells nor their counsel have any interests that might cause them to not vigorously pursue this action.

81.   **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Gregory Funding's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve many individual claims based on a

single set of proof in a case.

82. The Plaintiffs and putative class members submitted qualified written requests or requests to information to Gregory Funding requesting copies of the servicing notes for their mortgages.

83. Under Regulation X, Gregory Funding was obligated either to produce the servicing notes or, if not, to conduct " a reasonable search" for the document the Cockrells and putative class members had requested, and to provide them with "a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number for further assistance." 12 C.F.R. § 1024.36(d)(1)(ii).

84. Typically, the technology platforms used by mortgage servicers include multiple, standard computer screens for each account, one of which contains the notes inserted by the mortgage servicer's personnel over the course of the servicer's handling of a borrower's account. This file is easily accessible and can be easily printed, or the information in the file can be easily downloaded into a printable document.

85. In response to the Cockrells' and putative class members' requests, Gregory Funding failed to provide the servicing notes, failed to conduct the mandated "reasonable search" for available information, and failed to describe its search, as required by Regulation X.

86. Instead, Gregory Funding merely stated that the requested servicing notes were "proprietary."

87. There is no proper "proprietary" concern to the Cockrells' and putative class members' request for their own servicing notes, nor do any of the other objections allowed under Regulation X apply.

88. Gregory Funding's refusal to produce the servicing notes based on a claim of confidentiality was pretextual and reflected a pattern and practice of noncompliance with its obligations under RESPA.

89. In addition, the boilerplate nature of the response shows a practice of misusing and distorting the narrow limitations in Reg. X, 12 C.F.R. § 1024.36(f) as an excuse for violating RESPA.

90. Upon information and belief, discovery will reveal that Gregory Funding's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e). For example, upon information and belief, its conduct was part of a standardized process that it used to respond to all qualified written requests, and hundreds, if not thousands, of consumers experienced the same procedures.

91. Because of Gregory Funding's refusal to provide the Cockrells and the putative class members with the requested information, they were deprived of their legal right to review account documents about their mortgage loan.

92. The Cockrells and the Class are entitled collectively to and therefore request statutory damages of $2,000 per consumer per violation, plus attorney's fees and costs, under 11 U.S.C. § 2605(f).

### COUNT TWO:
**Breach of Fiduciary Duty**
**(Individual Claim)**

93. The Cockrells incorporate each of the preceding allegations.

94. Gregory Funding was acting as an escrow agent for the Cockrells.

95. In the alternative, the Cockrells placed a special confidence in Gregory Funding to properly manage their escrow account.

96. As a result, Gregory Funding owed a fiduciary duty to the Cockrells to act in good faith and with due regard in managing their escrow account that it held in trust.

97. Gregory Funding's conduct, including making improper disbursements from the escrow accounts for property taxes that were not due, breached the fiduciary duty that it owed to the Cockrells.

98. The Cockrells were damaged by Gregory Funding's breaches of its fiduciary duty. For example, they experienced shortages in their escrow accounts, which led to being billed for amounts that they did not owe and the assessment of late fees, corporate advance fees, and other default-related fees to their account.

99. Because it knew that the Cockrells did not owe property taxes, Gregory Funding's conduct was either malicious or so reckless or negligent that it demonstrated a conscious disregard for their rights.

100. As a result, the Cockrells may recover compensatory and punitive damages from Gregory Funding.

## COUNT THREE:
### Negligence
### (Individual Claim)

101. The Cockrells incorporate each of the preceding allegations.

102. The Cockrells had to maintain an escrow account by their mortgage lenders.

103. Gregory Funding assumed the duty of servicing the Cockrells' mortgage loans, including the administration of their escrow account.

104. The Cockrells did not chose Gregory Funding to be their mortgage servicer. Instead, Gregory Funding sought out and assumed the servicing duties for these mortgages for its own financial benefit.

105. In assuming the servicing of the Cockrells' loan, Gregory Funding needed to exercise reasonable care and prevent foreseeable harm in administering their escrow accounts and servicing their loan.

106. Gregory Fundings duty of care also arose because of the special relationship between it, on the one hand, and the Cockrells, on the other hand. This special relationship arose because the Cockrells entrusted Gregory Funding with their mortgage payments and proper management of their escrow accounts. Gregory Funding alone could ensure that these payments were managed properly and the appropriate amounts were held in escrow accounts.

107. Gregory Funding breached this duty by assessing real estate taxes to the escrow accounts that were not due, making improper payments out of the escrow accounts, refusing to acknowledge that the Cockrells did not owe real estate taxes, and assessing improper late fees and default-related charges as a result of its escrow mismanagement.

108. The Cockrells were damaged by Gregory Funding's breaches of its assumed duty of care. For example, they experienced shortages in their escrow accounts, which led to being billed for amounts that they did not owe and the assessment of late fees, corporate advance fees, and other default-related fees to their account. They also suffered other non-economic damages.

109. But for Gregory Funding's breach, the Cockrells would not have suffered these injuries.

110. Because it knew that the Cockrells did not owe property taxes, Gregory Funding's conduct related to the Cockrells was either malicious or so reckless or negligent that it demonstrated a conscious disregard for their rights.

111. As a direct and proximate cause of Gregory Funding's negligence, Plaintiff and the putative class members may recover their compensatory and punitive damages from Gregory

Funding.

## COUNT FIVE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)
### (Individual Claim)

112. The Cockrells incorporate each of the preceding allegations.

113. As alleged above, the Cockrells submitted a qualified written request to Gregory Funding in August 2021, and Gregory Funding received the request.

114. Gregory Funding violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to the Cockrell's account, including removing all late fees and charges related to the improper escrow charges.

115. Gregory Funding also violated 12 U.S.C. § 2605(e)(2) by failing to provide the Cockrells with the copies of the telephone recordings that they requested to explain why the requested information was unavailable.

116. As a result of Gregory Funding's conduct, the Cockrells suffered concrete and particularized harm, including: the assessment of fees that they did not owe and emotional distress, including aggravation and stress.

117. Upon information and belief, discovery will reveal that Gregory Funding's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e). For example, upon information and belief, its conduct was part of a standardized process that it used to respond to all qualified written requests, and hundreds, if not thousands, of consumers experienced the same procedures.

118. The Cockrells may recover actual damages, statutory damages, costs, and attorney's fees from Shellpoint for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court under 12 U.S.C. § 2605(f).

## COUNT SIX:
## FRAUD OR CONSTRUCTIVE FRAUD
### (Individual Claim)

119. The Cockrells incorporate the preceding allegations.

120. As explained above, Gregory Funding made fraudulent representations to the Cockrells when it told her that their second mortgagee could not foreclose on their home since they were still paying their first mortgage.

121. In the alternative, Gregory Funding willfully failed to disclose that the second mortgagee could proceed with foreclosure regardless of the status of their first mortgage.

122. In the alternative, Gregory Funding made the fraudulent representation with reckless abandon and intent for the truth.

123. Gregory Funding's representations were untrue: the second mortgagee could—and did—foreclose on the Cockrells home in April 2021.

124. Upon information and belief, Gregory Funding knew that its representations were untrue because the second mortgage could proceed with a foreclosure regardless of the status of the first mortgage.

125. It was reasonable for the Cockrells to rely on the misrepresentation because Gregory Funding was their mortgage servicer.

126. The Cockrells relied on Gregory Funding's misrepresentations and omission when they decided not to pursue other avenues of saving their home.

127. If the Cockrells had known of Champion's misrepresentations or omissions, they would have used other means to prevent the foreclosure sale.

128. Gregory Funding knew, or should have known, that the Cockrells were relying on its representations because the Cockrells told the Gregory Funding representative that they wanted to stay in their home.

129. Gregory Funding's representations about the second mortgagee's ability to foreclose were false.

130. Gregory Funding made this false statement of material fact with the intent to deceive the Cockrells so that it would collect the improper fees and charges that it assessed to the Cockrells' loan as part of the foreclosure sale.

131. In the alternative, Gregory Funding negligently misrepresented the second mortgagee's ability to foreclose.

132. As a result of Gregory Funding's conduct, the Cockrells suffered actual damages, including the loss of her property, embarrassment; humiliation; and other emotional distress associated with the foreclosure sale.

133. The Cockrells are entitled to damages, including punitive damages because Greogry Funding's conduct was willful, wanton, malicious, and deliberate.

134. In the alternative, if Gregory Funding made the misrepresentations identified above innocently or negligently, Gregory Funding made those misrepresentations with the intent that the Cockrells rely on those representations.

135. The Cockrells relied on Gregory Funding's representations to their detriment and they have suffered damages because of Gregory Funding's conduct including: (1) the future value and lost equity in the property; (2) the loss of their home; (3) embarrassment; humiliation; and other emotional distress associated with the foreclosure sale; and (4) out of pocket expenses.

WHEREFORE, the Cockrells, on behalf of themselves and the putative class members,

move for class certification and for statutory damages, as well as their attorneys' fees and costs against Gregory Funding for the class claim, as well as actual, punitive, and statutory damages and attorneys' fees and costs for their individual claims; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court finds appropriate.

**PLANTIFFS DEMAND A JURY TRIAL.**

                                              Respectfully submitted,
                                              **JOHN COCKRELL and DENISE COCKRELL**

                                              By:    */s/ Kristi C. Kelly*
                                              Kristi C. Kelly, VSB #72791
                                              Andrew J. Guzzo, VSB #82170
                                              Casey S. Nash, VSB #84261
                                              Pat McNichol, VSB #92699
                                              Kelly Guzzo, PLC
                                              3925 Chain Bridge Road, Suite 202
                                              Fairfax, VA 22030
                                              (703) 424-7572 – Telephone
                                              (703) 591-0167 – Facsimile
                                              Email: kkelly@kellyguzzo.com
                                              Email: aguzzo@kellyguzzo.com
                                              Email: casey@kellyguzzo.com
                                              Email: pat@kellyguzzo.com
                                              *Counsel for Plaintiff*